IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERA DOMINIAK | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| PETSMART, INC. | : | |
| d/b/a PETSMART | : | |
| | : | |
| *Defendant.* | : | NO. 23-4 |

### MEMORANDUM

**Perez, J**                                                                                                  December 20, 2023

    Plaintiff, Vera Dominiak commenced this action against Defendant Petsmart, LLC (hereinafter referred to as "Petsmart"), raising a negligence claim following a slip and fall in Defendant's pet supply store and grooming salon. In her Complaint, Plaintiff alleges that she suffered serious bodily injury after falling on a puddle of dog urine present in the main aisle of the store. Before the Court is Petsmart's motion for summary judgment, which argues there is no genuine issue of material fact as to Defendant's lack of constructive or actual notice of the puddle of liquid that Plaintiff alleges caused her to fall. For the reasons set forth below, this Court will deny Defendant's motion.

    **I.**    **FACTUAL BACKGROUND**

    On November 8, 2020, Plaintiff Vera Dominiak went to the Petsmart located at 7422 Bustleton Avenue in Philadelphia at approximately 5:00 PM to drop off her dog for grooming services at the pet salon located in the back of the store. *Pl. Dep*. at 72. She returned at approximately 5:50 PM to pick him up, walking through the main aisle of the store to access the

salon. *Id.* at 88; ECF No. 19-6. This main aisle of the store is referred to by employees as the "drive aisle." *Reif Dep.* at 61. While proceeding in the drive aisle toward the rear of the store, she slipped on a puddle of liquid. *Pl. Dep.* at 87-89. She did not see the liquid substance prior to her fall and was unsure whether it was water or urine, but described the liquid as "yellowish". *Id.* at 108. After falling, she had a liquid substance on her hands and clothing. Despite Defendant's assertion that the "source of the substance is unknown", this Court's review of the record finds sufficient evidence tending to show that it was, in fact, urine. Indeed, Petsmart Manager Patricia Reif testified that the puddle was urine and the incident report she filled out on the date of the fall indicated as such too. *Reif Dep.* at 104; ECF 19-6. At the time of her fall, Plaintiff did not see any dogs in the drive aisle or in the vicinity of the store where she fell. Neither Plaintiff nor Manager Reif were able to conclude exactly how long the puddle of urine was present prior to Plaintiff's fall.

During her deposition, Manager Reif explained that dogs routinely urinate on the store's floor several times a day, every day. *Id.* at 39, 41. Customers regularly neglect to clean up after their animals who have accidents in the store. *Id.* at 41-42. She testified that it is her job to monitor the floor and "continuously look[] around for things that could be a slipping hazard." *Id.* at 25-26. The store maintains a written procedure for performing visual inspections of the floors for hazards. Reif testified that these walk-through inspections generally occur at 9:00 AM, 1:00 PM, and 5:00 PM each day and take approximately 15 to 20 minutes. Manager Reif was unable to confirm through her testimony that an inspection was in fact performed on the date in question, nor could she say when exactly it occurred, or its duration. Her testimony merely established that this was her general procedure day-to-day. *See Id.* at 68. No further documentation, such as an inspection log, has been presented.

Because dog urination occurs with such regularity at this Petsmart location, the store has established five clean-up areas called "oops stations" that are stocked with cleaning supplies. *Id.* at 23-24. Ms. Dominiak's fall occurred in the central aisle of the store, which extends from the front entrance of the store all the way to the back where the dog grooming services are located. *Id.* at 60. The drive aisle is a "high traffic area" and did not include an oops station. The closest oops station is located in an adjacent aisle. *Id.* at 61, 62.

Defendant does not dispute that Ms. Dominiak was at the store on the date in question nor does Defendant dispute that she slipped and fell on a puddle of urine inside the store. Instead, Defendant asks this Court to grant summary judgment because it had no actual or constructive notice of the puddle. Based on the record presented by the Parties, there remain genuine issues of material fact concerning: (1) how long the puddle was present prior to Ms. Dominiak's fall, (2) whether dog urination constitutes a recurring hazard; and (3) whether Petsmart's inspection procedures were sufficient. These issues are best handled by a jury and render summary judgment inappropriate.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324.

### III.   LEGAL DISCUSSION

Under Pennsylvania law, "[a] prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.,* 910 A.2d 20, 27 (Pa. 2007).

The standard of care owed by a landowner to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. *Carrender v. Citterer*, 469 A.2d 120, 123 (Pa. 1983) (citing *Davies v. McDowell Nat'l Bank*, 180 A.2d 21 (Pa. 1962); Restatement (Second) of Torts §§ 328-343B (1965)). There is no dispute that Ms. Dominiak was a business invitee at Petsmart on November 8, 2020. *See Estate of Swift v. Northeastern Hosp.,* 680 A.2d 719, 723 (Pa. Super. Ct. 1997) ("a business visitor is a person who is invited to enter or remain on land

for a purpose directly or indirectly connected with business dealings with the possessor of the land."). Additionally, it is uncontested that Ms. Dominiak did not discover or notice the puddle of liquid prior to slipping in the aisle. As such, Petsmart owed Ms. Dominiak a duty, as set forth in the Second Restatement of Torts, as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1193 (Pa. Super. 2015) (quoting Restatement (Second) of Torts § 343 (1965)). "The threshold of establishing a breach of duty is notice." *Kujawski v. Wal–Mart Stores, Inc.,* No. 06–4120, 2007 WL 2791838, at *3 (E.D.Pa. Sept.25, 2007). To establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Estate of Swift v. Ne. Hosp. of Phila.,* 456 Pa.Super. 330, 690 A.2d 719, 722 (Pa.Super.Ct.1997) (citing *Moultrey,* 422 A.2d at 598).

Petsmart recognizes that it had a duty to keep the store reasonably safe for its customers, and it appears that, at least for purposes of summary judgment, Defendant does not contest that Plaintiff was injured due to falling on the puddle inside of the store. Petsmart fails to affirmatively argue that it did not breach any duty to Ms. Dominiak because it acted reasonably to prevent the type of harm Plaintiff suffered—they merely argue that they had no notice of the puddle of urine in question. Plaintiff is not arguing that Petsmart employees directly created the hazardous

condition, thus, the question here is whether a jury could reasonably conclude that Petsmart had actual or constructive notice of the puddle of dog urine that caused Ms. Dominiak to fall.

1. **Actual Notice**

This Court first turns to whether the evidence in this case, examined in a light most favorable to Plaintiff, would allow a jury to conclude that Petsmart had actual notice of the condition of the floor in the drive aisle. Although Plaintiff does not claim that Defendant *actually* knew about that specific urine puddle prior to the incident, Plaintiff argues that Petsmart had actual notice of the hazard in the drive aisle due to a "recurring condition." ECF No 19. Based on Petsmart's knowledge of the frequency of dog urination on the floors, Plaintiff argues that Defendant took insufficient steps to protect their business invitees from those risks.

A jury may infer that a landowner had actual notice of a condition where "the condition is one which the owner knows has frequently recurred." *Moultrey v. Great A & P Tea Co.,* 281 Pa. Super. 525, 531, 422 A.2d 593, 596 (1980); *Porro v. Century III Assocs.,* 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004). This obviates the need for a business invitee to prove constructive notice. *Id.* Pennsylvania courts regularly infer actual notice from a frequently reoccurring dangerous condition. *Sheil v. Regal Ent. Grp.*, 563 F. App'x 216, 219–20 (3d Cir. 2014).

Where a dangerous condition "was not a mere chance occurrence, but so often repeated as to call for frequent notices to the owner ... we cannot say the jury was not justified in finding defendant failed in his legal duty." *Markman v. Fred P. Bell Stores Co.*, 285 Pa. 378 (1926). The *Markman* plaintiff slipped and fell at the entrance of defendant's store on vegetable refuse which had accumulated on the wet platform outside defendant's store. The store had a practice of washing vegetables in the street directly outside, which created a slippery condition existed at the time of the accident. *Id.* at 380-381. The Court recognized that the "mere presence of such refuse does not

in itself show negligence, for this condition may temporarily arise in any store of this character." *Id.* at 382.

If a landowner exercises due care to keep the passageways clean, it is not responsible for an accidental slip and fall. *Id.* at 382-383. *Markman* held that the condition of vegetable refuse was so pervasive as to call for "frequent notices to the owner, and on one occasion to the police, and the same situation was shown to have existed when the customer was hurt." *Id.* at 383. Accordingly, the court refused to disturb the jury's finding that defendant breached his legal duty to keep the premises reasonably safe and that the owner was liable for negligence of the employees in not keeping the aisles and entrances reasonably clean and safe. *See also, Morris v. Atl. & Pac. Tea Co.,* 384 Pa. 464, 121 A.2d 135, 137–38 (1956) (holding that a parking lot owner or agent was put on notice "every winter" of dangerous, icy conditions in the lot, and, therefore, was on actual notice of a possibly dangerous condition for its patrons); *Falcone v. Speedyway*, 2017 WL 220326, at *3 (E.D. Pa. Jan. 19, 2017) (denying defendant's motion for summary judgment on actual notice grounds because (1) the defendant's employee testified that the hazardous condition resulting in the plaintiff's fall frequently recurred and (2) the plaintiff adduced evidence of safety precautions which gave rise to an inference that the defendant knew the hazardous condition frequently recurred).

"The analysis, however, is not limited to a determination of whether the dangerous condition was a frequent occurrence. Rather, Pennsylvania law requires that a plaintiff demonstrate (1) that the dangerous condition occurred frequently and (2) that plaintiff's injury was caused by the frequently recurring condition." *Sheil,* 563 F. App'x 216 at 219. *See, e.g., Martino v. Great Atl. & Pac. Tea Co.,* 419 Pa. 229, 213 A.2d 608, 609–10 (1965) (no actual notice in a case where a customer slipped on a grape and injured herself, because even though there was evidence that

"grapes had fallen from the counter on numerous occasions," there was no evidence "as to the cause of the presence of the grape in the aisle"); *Myers v. Penn Traffic Co.,* 414 Pa.Super. 181, 606 A.2d 926, 929 (1992) (holding that, although evidence that "filling the produce cases makes a mess" indicated that the dangerous condition was a recurring one, there was no actual notice, because there was "nothing in the record to indicate that the produce cases had been filled near the time that appellant fell").

"When a dangerous floor becomes the status quo . . . it is fair to infer actual notice." *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757, at *7 (M.D. Pa. July 29, 2010). However, "when reasonable preventive measures and remedies are enacted," a finding of negligence is inappropriate. *Id.* In *Farina*, the plaintiff slipped and fell on a piece of fruit in the defendant's supermarket that was a distance away from where that fruit was sold in sealed containers. There was evidence showing that customers would often "graze" on store items and discard portions on the floor. *Id.* at *5. Aware of this problem, the store attempted to prevent future hazards to its patrons by sealing the fruit containers to prevent customers from opening them in the store, and by creating a schedule for the maintenance department to conduct hourly inspections. *Id.* at *7. The *Farina* court concluded that, "unlike in *Markman* and *Morris*," "reasonable corrective measures" were "instituted to prevent hazardous conditions that have occurred in the past, and the condition has not remained pervasive or obvious, thus it cannot be said that the defendants had actual notice by means of knowledge of a recurring dangerous condition." *Id.*

Plaintiff Dominiak has presented sufficient evidence to raise a triable issue as to actual notice. That is, the record demonstrates that the frequency of dog urination at Petsmart rises to the level of a recurring condition at the store. The admission by Manager Reif that dogs pee in the store every day constitutes a "dangerous condition" "so often repeated as to call for frequent

notices to the owner." *Markman*, 285 Pa. 378. Defendant maintains that this hazard happens only "occasionally" and that the "absence of notice of the particular puddle of liquid" does not overcome the notice requirement. (ECF No. 20 at 1). Defendant fails to meaningfully address the recurring condition theory of liability. Furthermore, Defendant does not attempt to argue that the remedial measures taken by the store – the routinely scheduled visual inspections and "oops" stations—adequately satisfy its duty to patrons. This Court finds that the question of whether these measures sufficiently address the recurring hazard of dog urine is best decided by a jury. A jury is entitled to determine whether the inspection procedures were properly followed that day and whether, as the Plaintiff's expert opined, the procedure itself was sufficient.

Plaintiff argues further that Petsmart has a hand in creating the recurring hazard of dog urine based on its "business model and the physical layout of its stores." ECF 19 at 6. "Part and parcel of [D]efendant's business is inviting dogs on to the premises." *Id.* at 5. "Pets, like Ms. Dominak's . . . go to grooming services and are often held for hours in the back of the store without going [sic] to the bathroom" and are then "released to walk back up the drive aisle of the store." *Id.* This Court agrees with Plaintiff's contention that the location of the pet salon at the end of the drive aisle, which is the main walkway through the store, "creates an issue of fact as to whether these conscious business decisions [sic]" demonstrate that Petsmart "helped create this hazard." *Id.* at 6.

### 2. Constructive Notice

Even if Petsmart could establish it had no actual notice, summary judgment would still be improper here because there is a genuine dispute of fact regarding whether it had constructive notice of the urine puddle. Defendant argues it had no constructive notice because Plaintiff has not set forth evidence of the "temporal duration of the liquid on the floor." ECF No 17 at 9. However,

the record presents circumstantial evidence of how long the puddle was there based upon the timing of Manager Reif's inspections and the fact that Plaintiff did not see any dogs in the vicinity at the time of her fall. Moreover, the location of the spill in the main aisle of the store and Defendant's knowledge that dogs frequently urinate on the floors mean that a jury could fairly conclude that the spill was on the ground for a long enough period of time.

Where a plaintiff is unable to demonstrate actual notice, he or she may still meet its burden by establishing constructive notice. What amounts to constructive notice of a condition depends upon several factors. *Hagan v. Caldor Dep't Stores, Inc.*, Civ. A. No. 89–7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991) (citing *Stais v. Sears Roebuck & Co.*, 102 A.2d 204, 206 (Pa. Super. Ct. 1954)). These factors include: (1) the number of persons using the premises; (2) the frequency of such use; (3) the nature of the defect; (4) location of the premises; (5) the condition's probable cause; and (6) the opportunity that the defendant, as a reasonably prudent person, has to remedy the condition. *Id.*

Constructive notice requires proof that the condition was present long enough that, in the exercise of reasonable care, defendant should have known of its presence. "State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." *Kujawski v. Wal-Mart Stores, Inc.*, 2007 U.S.Dist. LEXIS 71261 (E.D.Pa. Sept. 26, 2007) (Giles, J.). "If a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees form such a hazard." *Id.* (quoting Restatement (Second) of Torts § 343).

There is no absolute threshold duration under Pennsylvania law for constructive notice. *See Branch v. Phila. Trans. Co.,* 374 Pa. 60, 96 A.2d 860, 862 (Pa.1953) ("There could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice."). Although the evaluation of the constructive notice factors is normally a jury question, "where the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the Court." *Felix v. GMS, Zallie Holdings, Inc.,* 827 F.Supp.2d 430, 437 (E.D.Pa.2011) (quoting *Lanni v. Pa. R.R. Co.,* 371 Pa. 106, 88 A.2d 887, 889 (Pa.1952)). Accordingly, courts applying Pennsylvania law "have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." *Kujawski,* 2007 WL 2791838, at *4 (citations omitted).

The Court turns now to the six factors Pennsylvania courts use to determine constructive notice of dangerous conditions: the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it.

The central location of the puddle of urine that Plaintiff fell on indicates that Petsmart should have discovered the hazard with reasonable diligence in a short period of time. The drive aisle is the main thoroughfare through the store and is the path by which patrons escort their dogs to the pet salon located in the back of the store. It is undisputed that the area in which Ms. Dominiak fell was highly trafficked by both people and their pets. At this stage, the record sufficiently demonstrates that the puddle of liquid was in fact urine from a dog invitee to the store. While Plaintiff cannot say how long the puddle of urine was present on the floor, the record sets forth sufficient circumstantial evidence to allow a jury to conclude that it was present for enough time to create constructive notice to Defendant. Manager Reif testified that her general practice is to

perform visual inspections at 9:00 AM, 1:00 PM, and 5:00 PM, each of which last approximately 15-20 minutes. Given that Plaintiff's fall occurred at around 5:50PM, it would be reasonable for a jury to find that the puddle was there for up to 30 minutes before Plaintiff encountered it.

Confronted with evidence of how frequently dogs urinate in the store and the corrective measures Petsmart undertakes in acknowledgment of it, a jury could fairly find that the puddle was present on the floor for a significant enough period of time such that Petsmart knew or should have known of its existence. As the Court in *Branch* stated, "The difference between 90 minutes and 25 minutes is only one of degree and not of principle. There could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice." *Id.* at 65. Of course, based on the same evidence, a reasonable jury could find that the puddle was not on the ground for long enough to impute liability. At the summary judgment stage, Plaintiff has presented enough evidence to raise the issue for a jury as to the duration of time the urine puddle was present before she slipped and fell on it.

### IV. CONCLUSION

Plaintiff has come forth with evidence sufficient to raise a genuine dispute of material fact as to whether Petsmart had actual or constructive notice of the puddle of urine that caused her to fall. Accordingly, Defendant's motion for summary judgment is denied.